Good morning, Your Honor. It's Tim Warner for Mr. Taylor v. Appellant. May I proceed? Your Honor, the testifying prosecutor in this case signed the complaint charging Mr. Taylor with murder. He interviewed multiple times the main prosecution witness. He made himself a witness by conducting those interviews. He made himself an agent of the prosecution. By every definition of agency law, the prosecutor is an agent of his office. And by his action of disobeying that court order and making that improper suggestion, here he is again acting in furtherance of his office's goals, which is to get a conviction in this case against Mr. Taylor. Is your argument any different if he had been, say, a paralegal? You're saying is the argument any different than if a paralegal were to have done the interviews? Yes. A paralegal does the interviews, testifies at trial, just as the prosecutor did in this case. Is there any analytical difference? I think that the paralegal would also be deemed an agent of her office and that she would be acting within the course and scope of the paralegal's employment. I think that a paralegal conducting such interviews would also anticipate being called as a witness in support of the office's case. So I don't think that there is a difference. How about a police officer? Let's say it's a police officer who does the interviews and then blurts this out in the stand. If the police officer does the interviews, the police... I think there you have... I think it is... I think that the police officer would be an agent as well, acting in furtherance of the prosecutorial efforts. Okay. But I think it is particularly strong in this case when you've got a deputy district attorney who, by conducting those interviews, given the nature of this witness, he was clearly... he was making himself a witness. And then when his... essentially an associate acts as a trial attorney because he's made himself a witness, what can he do? So I... So let's assume that there's error in this case. Tell me why you think it's not harmless. The... Well, first of all, the remedy that was fashioned does not erase the suggestion made by... the improper suggestion made by the prosecutor, which is that the defense had manipulated this witness, had suggested to the witness that she say things that are helpful to Mr. Taylor. All it does is it references the October 17th meeting. And if you read that together with the deputy district attorney's statement, it doesn't do anything to erase the... to erase that improper suggestion at all. So I think it is harmless. The district court never got to harmlessness, okay? But I think it is harmless. It is a significant error. So the jury's told, if I'm... maybe I'm paraphrasing the stipulation, but I think it's close. There's no evidence the defendant told Garvin White what to say or how to testify, and any reference by Mr. Orr to a meeting between Ms. White and the defense refers to the October 17th interview with the defense investigator and defense counsel. Right. What's wrong with that? Because it's still... the suggestion... let me go back to the suggestion. The improper suggestion made by the prosecutor was that these... Garvin White started talking about aggressive things after she met with defense counsel. So all we're saying here with this remedy, with this statement, is that when she talked about... when the district attorney referenced a meeting with defense counsel, it happened to be that October 17th meeting. It doesn't erase the suggestion that defense counsel acted improperly during that meeting. So it really... it directs them to a specific meeting and doesn't do anything to resolve the problem. I'm not sure I get your point. It struck me that the judge, once the judge makes the decision he or she is going to do something, can admonish and direct the jury. That's what they usually do. Here in this case, the attorneys took it and arrived at a stipulation. And the stipulation was given to the jury, which we assume they followed. I just wonder why that doesn't end the issue. Do you have... Your Honor, I could address that point. And you are talking about an issue that has not been raised in the briefing, but I'm prepared to address that point. And actually, what the... there was a lengthy discussion about what remedy, what action the Court can take. Okay? There was lengthy discussion about it. The Court decided, well, I'm going to redact the order, the transcript redacted. And then the Court decided that we're going to have the prosecutor recall Mr. Orr, the fellow who violated the order. And before we do that, we're going to put him on the stand. And they put Mr. Orr on the stand, and it turns out that he was very determined in his belief that the defense was acting inappropriately with this witness during these interviews. And it was after that there was a discussion about what to do, what to do next. And essentially, the prosecution states that during this discussion to the judge, you ordered us to put Mr. Orr back on the stand to clarify what he meant. I am prepared to do that if they don't want to stipulate. Okay? So essentially, the prosecution was saying, look, Judge, you ordered us to put him on the stand. I'm going to do that unless they stip. So the defense was really put in a situation where they had to stip as a matter of tactics or Mr. Orr, this person who was dead set on, in his opinion, that defense counsel was inappropriate. They had to either go with the stipulation or they're going to put Mr. Orr back on the stand. And the defense counsel didn't want to do that. The defense counsel said, I object to Your Honor putting Mr. Orr back on the stand. And the court was silent. The court basically backed up the prosecutor in this. I understand. It's a difficult position for a defense lawyer to be in. They make choices. Right. But my question goes a little further than that. Once the stipulation is read to the jury and the jury is told they are to accept this stipulation as to what actually happened, what does that do to the problem? I mean, doesn't that do away with the problem? The jury is being told, this is what you're to believe as to what happened, and we assume the jury followed that direction. What is left of the objection then? The jury was never told that you are not to conclude the defense counsel acted inappropriately in its meetings with the witness or influenced the witness inappropriately. The jury was never told that. Right, but the defense counsel didn't want them told that. The defense counsel had the prosecutor threatened either I'm going to call Orr or you're going to agree to this stip. And the defense counsel said, look, I don't want to agree. I don't want Orr to take the stand. The court was silent and basically let this thing ñ this was a tactical choice, but I think that the court mishandled this in terms of after Mr. Orr took the stand out of the jury's presence and said, look, I think that defense counsel wasn't appropriate. It was an improper choice. I'm sympathetic with your position. I'm anxious to hear the prosecution tell me why this is all right. But the real issue is, to me, the difficult issue that you have is, is there anything left of that issue once the stipulation is read to the jury? You say, no, you wanted a whitening of your record. You wanted to make sure that they understand you didn't do anything. But all the stipulation does is tell them what they're to believe Orr said or had. And once that's read to the jury and the jury's accepted it, I'm just wondering if that doesn't take the stinger away, even though you'd like to have something better as far as the error that occurred. That's what I need to get from you. And it doesn't, because the jury was, the stipulation never told the jurors that the defense counsel did not improperly influence the witness. It just referred them to the October 17th interview. In a way, it made it more, it made it more, it referred them to a specific interview. It didn't say that nothing inappropriate happened at that interview. Well, you know, counsel, you know, a trial, a trial court has never tried a perfect trial. We've never had one. And frequently surprises like this come up, and in the midst of a trial, you've got to do whatever you can to ease the situation. And here, what else could the trial judge have done? He struck it from the record. He entered, they entered into a stipulation, and they do the best they can under this surprise. Mistrial. Beg your pardon? A mistrial. That's what defense counsel requested, a mistrial. Yes, but counsel also entered into a stipulation. The mistrial request was made first, and then the, we're referring to it as a stipulation, and this is, it's at page 737 of the record. And, again, this wasn't brief, so I'm prepared to address it. Page 737 of the reporter's transcript. That's why you have oral arguments, so we can explore some things that you didn't put in your brief. All right. All right. I like to turn to us. Okay. But to call it a stipulation, I think, oversimplifies this. And it's at page 737 where this is discussed. Prosecutors, the judge permits the prosecutor to make an improper, really sort of a threat. Look, defense counsel, either you agree to the stip, right, or I'm going to call Mr. Orr to the stand again. And this is after we know that Mr. Orr is sort of determined to, in his thinking, that there was something inappropriate going on, and defense counsel said, Your Honor, I object to them calling, that Orr would have to take the stand again. And I think that that is, that's sufficient. We're saying that there was a stipulation, but this was sort of a forced stip and a forced choice that was put on defense counsel. Okay. But, again, the bottom line here is did it have, did it render the trial unfair? You know, is there prejudice? Now, may I just, hear me out for a second. Sure. As I understand your argument, you're saying the jury needed to be told that no such thing occurred. And because the jury wasn't told that, then that makes the error harmful. Exactly. Now, let me, I'm looking at 672 of the record, and this is defense counsel. I've thought long and hard about this. The only cure would be to stipulate that the defense did no such thing, which would be the very nature of the conflict. It would be insinuating and putting it on Mr. Taylor that he must have talked to Ms. Garvon White. And had her start coming up with the contrived instances of violence. So that is not a cure and not a remedy that we can see. So it looks to me as though defense counsel looked squarely at what you proposed and said, well, that would be worse. Defense counsel's concerns at that point, these, and the discussions you're referring to went on for quite a while. The concern at that point was that if she's acting to protect her own self, and the instruction just says defense counsel didn't act appropriately, then that, without also saying that Mr. Taylor didn't act appropriately in his contact with the witness, that's, it's like by not mentioning Mr. Taylor's name, we're putting this off at him, and that's harming her client. That was her concern when she was talking about a conflict of interest. That was the, what the remedy did was it did say that there is no evidence that Mr. Taylor told the witness what to say. The remedy does say that. But the problem is what we're left with is that it doesn't remedy the issue of defense counsel acting inappropriately in her contact with this witness. That's the problem. And this was a case where it was an implied malice, not an implied malice. It was, the defense was heat of passion. The defense was, you know, imperfect self-defense to counteract malice. The, Ms. Garvin's testimony became important, significant for the defense, which is relying on her statements. And there was a suggestion made during the cross-examination of Garvin White that defense counsel had inappropriately told her what the defense is, as if she, you know, to allow her to come up with something helpful for Mr. Taylor. There was that suggestion combined with this error and the problem with the remedy given, what the jury was instructed, that was very harmful, very harmful to the case. Okay. Further questions? Sorry. Okay. I'll reserve any extra. Thank you. You're a little over time, but we'll give you a minute. Our questions took you over time. Let me take a break after this case. Good morning. May it please the Court. Justin Riley on behalf of the Warden. Taylor asks this Court to extend the clearly established Supreme Court precedent to include under agency law, under agency law principles, to include in the prosecutor's office a precipient witness. Now, Your Honor. Wait a minute. Wait a minute. In the particular witness, you mean a prosecutor who handled the case at the beginning? That's correct. But this was a prosecutor who was not acting as a prosecutor. As Judge Thomas aptly extended Appellant's argument, what if this were a paralegal? What if this were a police officer? And I would say arguably maybe even they, under agency principles, might be part of the prosecutor's office. But those, a paralegal and a police officer, would be acting in the course and scope of their employment. Well, Mr. Orr wasn't a paralegal. He was a lawyer. Oh, you're absolutely right.  He was not acting as a prosecutor. Let me ask you about Mr. Orr. Yes. And as I understand it, he was at the – had the case at the beginning. He took it to the preliminary stage and had discussions with the victims, and then somebody else took over. So the question is, is whether he is part of the group you have to worry about. Now, what I don't understand is – I hear your argument, and I've read your argument, but I don't understand how you discuss what Chief Justice Berger talked about of an entity. He refers to the prosecution as an entity. It's not a prosecutor, but it's a prosecutor's office. And then he cites – in Giglio, he cites the restatement of agency, and he cites the American Bar Association Project of Standards. Now, I pulled them up and read them, and it strikes me that if Chief Justice Berger heard your case, he'd say, well, of course it's part of the entity. But you argue opposite. Now, how do you distinguish what the Supreme Court of the United States has said about the entity theory? Each of these examples that Justice Berger – Chief Justice Berger. Chief Justice Berger gives in this particular case all encompass the actors acting in the course and scope of their employment. I believe there was Department of Justice employees. All of them were making promises to a defendant, and each was acting as a prosecutor when they made promises. Each was acting as a prosecutor when they ignored the promises. Each was acting as a prosecutor when they informed the jury that there were no promises at closing argument. In our case, Mr. Orr was not acting as a prosecutor. He might as well have been somebody off the street. He wasn't acting as a prosecutor when he testified. He was a percipient witness for the prosecution. He happened to have perceived – he happened to have perceived what it is he was testifying about while he was a prosecutor. But when he took the stand as a witness, he was no longer a prosecutor. He was a percipient witness. Just as if that prosecutor had gone to the grocery store for lunch and picked up a loaf of bread, he would not have been acting in the course and scope of his employment. He would have been a shopper. He was a witness here. Well, let's say for the sake of argument that in the Giglio case, the prosecutor had testified rather than the witness. The former prosecutor says there was no deal. Lying. Your argument, it seems to me, would be, well, he wasn't acting as a prosecutor. He was acting as a percipient witness of the deal. If the prosecutor who was trying the case had taken the stand – No, no, no. The prosecutor who made the deal. Oh, I'm sorry. In the Giglio case? Yeah. That person would have been acting as a percipient witness if he testified that there was no deal. Yes, but he as the trier of the – he as the prosecutor would have been presenting false testimony when he called himself to the stand and testified to that. Well, as I recall the case, we had a former prosecutor who made the deal, right? In Giglio? Yeah. Yes. Okay. So I'm talking about the former prosecutor taking the stand instead of the witness. The former prosecutor testifies falsely that there is no deal. Yes. We would have the same problem because the prosecutor who was trying the case would have been presenting false testimony because when the witness, the former prosecutor, had conveyed to the current prosecutor that there was no deal, both of them would have been acting in the course and scope of their employment. All right. Let's say he blurts it out on the stand. He's testifying about some unrelated matter. Maybe he's talking about what he had, you know, the tip. That knowledge is imputed because it's institutional knowledge. Yeah. So what's the difference in that case and this then? Because this is the type of information that it would have been the same if the prosecutor witnessed a car accident outside and had to take the stand. Except that he's not just casually going through. He's the prosecutor on the case. He's talking with the defense counsel. That is how he observed the events. Right. That's how he observed the events. He wasn't just another prosecutor in the office who was coming in for a cup of coffee while the interview was going on. He was the lead man at that point. I understand what you're saying. He wasn't acting as a non-attorney. He wasn't acting as a... When he gathered the information. He was on the case. I think if anything that Chief Justice is telling us is that it's a little different for When he cites as authority for what the entity theory is, he cites the American Bar Association's Thank you, Judge. And in those, Part D says, The same thing is true when he cites the general rule of Section 273. In accordance with the subject of the rules stated in this topic, the liability of a principle is affected by the nature of the principle. The knowledge of an agent concerning the matter to which the acts within the power to bind the principle or upon his duty to give the principle information. And he's citing these two in relationship to prosecution. Now, why doesn't that define entity and bind us as to how we look at this case? It does define entity, but we don't have a knowledge problem here. In Giglio, it was a knowledge problem. Essentially, the prosecutor, the general prosecutor was saying, oh, that information was way over in a filing cabinet in the corner down in the basement somewhere, and the current prosecutor didn't know anything about it. And what Chief Justice Berger is saying in this particular opinion is, if it's anywhere in your prosecutor's office, albeit in a filing cabinet way down in the basement somewhere, the entire prosecutor's office knows of the information. That's the kind of entity and the kind of agency that Chief Justice Berger is talking about. Here, what the appellant is asking this Court, and the reason I think it's – the appellant is asking this Court to extend agency law is because it's not about knowledge. It's about actions with regard to testifying as a witness. Now, the prosecutor in this particular case told the witness, this is what – this is how we're going to limit the testimony. The testimony is limited in that you cannot mention this particular area of information. The witness takes the stand and talks about it anyway, albeit in a very mild sort of way. But it's not a knowledge problem. This isn't – this isn't the problem described in Giglio. Well, you seem to be arguing this as a function issue rather than as an agency issue, and that seems to be a bit different. I mean, if you look at the agency theory, it would seem to me the relevant question is not whether he was carrying out a prosecutorial function, but rather was he acting under the control of the prosecutor's office at the time he testified. And my argument is it's both because neither is true. He wasn't acting as a prosecutor and he wasn't acting under the control of the prosecutor's office, except to the extent that he was called as a witness. He wasn't subpoenaed, was he? I doubt it. I don't know. I don't know if prosecutors subpoena all witnesses. Let me get you out of the agency for a second. Thank you. Before we do, Judge, I'd like to know if Mr. Orr is still employed. I can't tell you. I'm sorry. I say that facetiously. I want to talk a little bit about whether this has been a waiver. This is a little confusion in the record. And I know this doesn't get you the real good stuff, but we do have to look at it. The California Court of Appeals said it was waived because defense attorney waited until the next morning. Now, I've tried cases as you have. There's a lot of times you don't want to make an objection right after it because it puts the spotlight on. But having said that, the next morning, the trial judge and both parties proceeded as if it had not been waived. There was not mentioned waiver at that time. And they proceeded and did what they did to try and correct the problem as they saw it. So my question is, are we bound by the California Court of Appeal where it says it was waived? Or do we look at the record and see what the parties actually did and what the trial judge did? I'm a little that if that waiver of the California Court of Appeals is correct, that does away with the whole problem. So would you sort of tell us what you think the law is in relationship to whether this issue was saved? Absolutely. Now, the Supreme Court is taking up the general issue of procedural bar, procedural default in Walker. So that is currently pending. I think it's being briefed before the United States Supreme Court. But under this Court's precedent, Bennett v. Mueller, the only analysis that we really go through with procedural bars is to determine whether or not the State court imposition of the bar was independent and adequate, not whether it was correctly applied. I think that flies in the face of the federalism principles dictating that Federal habeas review should not delve into whether or not State law was correctly interpreted or correctly in that sort of manner. But assuming we can get past that, I believe that there are two reasons why this bar was correctly imposed, if that's even something we can get into on habeas review. The bar imposed was a contemporaneous objection bar. Now, as you can imagine, objecting in a contemporaneous fashion allows the Court to immediately fix any sort of harm that was caused by the potential error. Now, this attorney waited 24 hours or so to make the objection. I'm not saying that the defense attorney should have stopped immediately right there, slammed on the brakes, and started objecting wildly, but at the break, maybe, while the witness was still on the stand, the witness had been excused. We already started and appellate counsel mentioned one of the harm, one of the harmful effects that he alleged was that we were going to have to recall Mr. Orr to the stand. Contemporaneous objection is all about fixing it and fixing it immediately. So waiting until the next day, I believe, is too late, as did the Court of Appeals. So this happened at the end of the trial day or during the trial day? The next day. No, I mean, when did it come up? I couldn't tell you what exact time it was. For reasons I don't understand, I had this vision it was at the end of the trial day. They finished out the witness. And one of the other harmful effects. I think, though, to pursue that, though, I think that's my recollection, too. It's the end of the trial day, and the next morning the attorney says, I'm going to move for a mistrial. Why isn't that soon enough? Like I said, the witness was excused. And one of the other harmful effects that the defense attorney at trial argued in her motion to dismiss, I believe it was her motion for new trial, was that she was not able to effectively cross-examine, continue her cross-examination of Mr. Orr because this big revelation had come out. And it stopped her in her tracks. And she couldn't continue. And it had that negative effect as well. Well, you can't argue that if you're going to finish up your cross-examination and you're going to wait until the next day to make your objection. The second thing, the second reason why I think this was a correct application of the bar, is that the next day defense counsel did not style this as a prosecutorial misconduct problem. It was an admission of evidence problem. Now, they have slightly different remedies. Prosecutorial misconduct problems will involve chastising the prosecution in front of the jury, possibly. Maybe that was called for. Possibly some sort of sanction that way. And the defense attorney did not style it as a prosecutorial misconduct objection until much later on after the trial, I think. So that's the second reason why I think this was correctly applied, if we can get there on Federal habeas review. Well, so let's take to the first issue, then. Yes. Which is the bar has to be consistently applied. Yes. And what evidence in the record do we have that the California courts have consistently applied the contemporaneous objection rule? In our record? Yes. There's nothing. In the trial court record? In any record before us right now. Oh, absolutely. In the appellate brief, I believe we cited two, possibly two, Ninth Circuit court cases that have previously found California's contemporaneous objection bar to be independent and adequate. So what do you think about People v. Hill, then? That's the case everybody cites. But in People v. Hill, you have all sorts of exceptions to the contemporaneous objection rule. And then they go, in that particular case, there were multiple failures to assert an objection. So in the principal case I see out of California, it's inconsistent and it's not consistently applied. I recognize People v. Hill, but I point you to the other Ninth Circuit cases that hold that the California contemporaneous objection bar is both independent and adequate. And this panel, at least, is bound by those decisions. Well, we've taken you over your time. So any further questions? No. Thank you very much. We'll hear a rebuttal. Thank you. Your Honor, I did check. The mistrial motion was made the next morning, the morning after the ---- Right. That was the last witness of the day. Right. Okay. Just to address the procedural bar issue, the issue is whether the Federal court has any basis or interest in deferring to State sovereignty. That's the issue. And unless there actually was a violation of this rule, there is no Federal interest in deferring to it. Unless there ---- What was being proposed is really a purely technical application of the as we've talked about, there was detailed discussion about what to do in this situation, how to remedy this situation. So it's a ---- The issue we have is one where the whole policy behind contemporaneous objection wasn't violated and the court had ample opportunity, ample discussions to consider the issue. And while I disagree with what came out as the remedy to this, there was no violation of the procedural bar rule. Okay. I think we have your arguments in hand. Thank you both for your arguments this morning. And the case just will be submitted and we will take a ten-minute break. Thank you. All rise.
judges: Mills, Wallace, Thomas